UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | DECISION AND ORDER |
| vs. | 23-CR-6047 CJS |
| | 23-CV-6615 CJS |
| SHAWN LEMAR LEE, | |
| Defendant. | |

_____

## INTRODUCTION

Now before the Court is a motion (ECF No. 52) by Shawn Lemar Lee ("Lee" or "Defendant") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For reasons discussed below, the application is denied.

## BACKGROUND

The reader is presumed to be familiar with the history of this action. Briefly, on April 18, 2023, Defendant waived indictment and pled guilty, pursuant to a Plea Agreement, ECF No. 40, to a one-count felony Information charging him with a violation of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm and ammunition). At all relevant times in connection with the plea and sentencing, Defendant was represented by attorney James Wolford ("Wolford").

The "Factual Basis" section of the Plea Agreement indicated that on March 29, 2022, Defendant, who had several prior felony convictions, including convictions in New York State for Burglary in the Third Degree, Robbery in the First Degree, and Criminal Possession of Stolen Property in the Fourth Degree, possessed a Citadel Warthog

1

semiautomatic 12-gauge shotgun and five rounds of 12-gauge ammunition at his residence at 243 Electric Avenue in the City of Rochester, and "discharged several rounds from the shotgun while walking on Electric Avenue." *Id*. at 3; *see also*, ECF No. 23, Transcript of Detention Hearing at pp. 8-9 (Indicating that five spent shotgun shells were recovered at the scene of the shooting).

The Plea Agreement, made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), asked the Court to sentence Defendant to "a term of imprisonment between 37 and 46 months," and contained a provision in which Defendant agreed to waive his right to appeal or collaterally attack any sentence that fell within or below that range. ECF No. 40 at pp. 5, 7.  The Plea Agreement also contained a provision in which Defendant agreed to forfeit his rights in the shotgun and ammunition, which had been found by police in the closet of his bedroom after his wife consented to a search of their home. *Id*. at 8; *see also*, ECF No. 23, Transcript of Detention Hearing at pp. 9-10 (Describing the location of the shotgun and ammunition found after Defendant's wife consented to a search by police).

During the Plea Hearing, Defendant stated, under oath, among other things, that he had read the Plea Agreement himself and reviewed it with Wolford; that Wolford had answered any questions he had about the Plea Agreement; that he had had sufficient time to confer with Wolford before deciding to plead guilty; that he was satisfied with Wolford's advice and representation; that he understood the rights he was giving up by waiving indictment and pleading guilty; that no one had forced or threatened him to plead guilty "in any way"; and that he believed it was in his best interest to plead guilty.

2

Regarding the elements of the crime, Defendant further agreed that he had possessed the shotgun and ammunition (and had discharged the shotgun); that he had previously been convicted of the felonies listed in the Plea Agreement; that he knew he had been convicted of such felonies when he possessed the shotgun and ammunition; and that the shotgun had been manufactured outside of New York State. The Court determined, based on Defendant's answers to the Court's questions, and on his demeanor, that Defendant's plea of guilty, to violating § 922(g)(1), was entered knowingly, intelligently, and voluntarily.

During a subsequent interview with Federal Probation and Pretrial Services, in connection with the preparation of a Presentence Investigation Report ("PSR"), ECF No. 44, Defendant reiterated what he had told the Court during the Plea Hearing about the circumstances of the crime. Namely, that despite being aware of his prior felony convictions, he had possessed the shotgun and ammunition, and that he had discharged the shotgun on Electric Avenue, purportedly because he was upset with criminal activity in the neighborhood. *See, e.g.*, PSR at 7 ("[T]he Defendant shared that his decision to possess (and discharge) a firearm, and to possess ammunition, was the result of his frustration with the conditions of his community."); *see also*, Defendant's Statement Regarding Sentencing Factors, ECF No. 47 at pp. 1-2 ("On the night in question, Shawn's neighborhood was experiencing a high rate of gun fire and crime that day. Not thinking clearly, and frustrated with the situation, Shawn felt it was necessary to send a message to those criminals on Electric Avenue, and the surrounding area, to stay away from his home by firing his shotgun in the air (see PSR ¶ 19).").

On August 21, 2023, Wolford filed a "Statement With Respect to Sentencing Factors" (ECF NO. 47) in which he affirmed that he had reviewed the PSR with Defendant, and that they had no objection thereto.

On August 28, 2023, the Court accepted the 11(c)(1)(C) Plea Agreement and sentenced Defendant within the agreed-upon sentencing range, to a 46-month term of imprisonment in the Bureau of Prisons ("BOP"). (ECF No. 49).

Defendant did not appeal his conviction or sentence. However, on October 25, 2023, proceeding *pro se*, Defendant filed the subject motion pursuant to 28 U.S.C. § 2255.

The motion does not dispute that Defendant had prior felony convictions, or that he knowingly possessed the shotgun and ammunition. Nevertheless, it contends that Defendant is "actually and factually innocent" of violating 18 U.S.C. § 922(g)(1), for the following reasons: 1) the shotgun he possessed "did not meet the definition of firearm according to [18 U.S.C.] § 921,"[1] since it did not have to be "registered," "was not altered, or readily converted," "did not fire any armor piercing ammunition," and was possessed "for hunting purposes only";[2] 2) the Government never proved that the shotgun met the definition of a firearm; 3) his plea was not intelligently and voluntarily made, since if he had understood that his shotgun did not meet the federal definition of a firearm he would not have pleaded guilty; 4) his conviction was unlawful since the federal government never gave him notice "in newspapers, magazine, radio, television broadcast or the

---

[1] *See*, Defendant's Memo of Law, ECF No. 53 at p. 4 ("A shotgun is not a firearm.").
[2] Defendant's assertion on this point is odd considering that he admits his "purpose" in possessing and firing off the shotgun several times in a residential neighborhood was not to hunt, but, rather, to "send a message" to other criminals to stay away from his home. /

4

internet" that it intended to enforce § 922(g); 5) the District Court lacked jurisdiction over the matter since he did not "fully understand" the crime to which he pled guilty; 6) the District Court lacked jurisdiction since § 922(g)(1) violates the Second Amendment to the U.S. Constitution, pursuant to *U.S. v. Bruen*;[3] 7) the District Court lacked jurisdiction since § 922(g)(1) usurps the "policing powers of the states"; 8) the District Court failed to conduct a proper plea colloquy under Rule 11, by not ensuring that Defendant understood the definition of a firearm; and 9) Wolford provided ineffective assistance of counsel by failing to file a motion to dismiss the charge or to suppress the shotgun and ammunition, which were seized during a warrantless search of his home; by failing to raise a "no knowledge" defense; by "lying" and "using intimidation and force" to get Defendant to plead guilty to a charge of which he was innocent; by failing to properly review the PSR with Defendant; and by failing to object to an incorrect calculation of his offense level under the Sentencing Guidelines.

Defendant further contends that the Plea Agreement's collateral-attack waiver does not apply to his motion, since he is challenging the constitutionality of his conviction.

The Government filed an opposition (ECF No. 56) asserting that Defendant's motion "should be dismissed as barred as [Defendant] procedurally defaulted on any substantive claim by failing to raise it on direct appeal, and also for lack of merit." *Id*. at 1.

Defendant then filed a reply/traverse (ECF No. 57) in which he primarily reiterates

---

[3] *See e.g.*, Defendant's Memo of Law, ECF No. 53 at p. 12 ("The fact is here, although Mr. Lee was convicted priorly of a felony, the Constitution does not exclude him from owning and possessing a firearm. Further, Mr. Lee is innocent of the firearm charge. The fact remains here he was only in possession of a lawful shotgun[.]").

the arguments in his 2255 motion.

The Court has considered the submissions and the relevant portions of the record.

## ANALYSIS

### Defendant's *Pro Se* Status

Since Defendant is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

### Section 2255 Principles

Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citations and internal quotation marks omitted).

### An Evidentiary Hearing Is Not Required

The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record "conclusively show" that the defendant is not entitled to relief. 28 U.S.C. § 2255(b). Here, the Court finds that a full evidentiary hearing is not required,

since there are no genuine material factual disputes and the record conclusively shows that Defendant is not entitled to relief.

Most notably, there is no factual dispute that Defendant, who had several prior felony convictions, knowingly possessed a shotgun and ammunition. Rather, Defendant's § 2255 motion primarily turns on questions of law relating to these undisputed facts, for which no evidentiary hearing is required.

To the extent that Defendant's papers purport to raise factual issues, the Court finds that the record conclusively establishes that they are not genuine disputes requiring a hearing and/or that Defendant's assertions are not credible. *See, e.g., Oruche v. United States*, No. 1:20-CR-00657 (MKV), 2024 WL 3728702, at *3 (S.D.N.Y. Aug. 7, 2024) ("[T]he Court need not credit factual assertions contradicted by evidence in the record of the underlying proceeding. Moreover, a hearing is not necessary where the allegations are vague, conclusory, or palpably incredible. Courts routinely rule on habeas petitions without a hearing where charges of ineffective assistance of counsel are unsupported or contradicted by the petitioner's prior sworn statements.") (citations and internal quotation marks omitted).

For example, the Court declines to credit Defendant's bald assertions that Wolford "used intimidation and force" to get him to plead guilty and failed to review the PSR with him, since they are refuted by Defendant's contrary prior statements, including his sworn testimony at the Plea Hearing. Similarly, Defendant's assertion that Wolford was ineffective for failing to object to the Court's improper use of a 1998 conviction to calculate his Guideline offense level is conclusively disproven by the PSR and record, which show

7

that neither of his 1998 convictions were used to increase his Guideline offense level or criminal history category. *See, e.g.*, PSR, ECF No. 44 at pp. 7-13.   Rather, the only prior conviction affecting his offense level was in 2003, *id.* at 7, and the only three convictions affecting his criminal history category were in 2003, 2013, and 2021, respectively, *id*. at 10-12.

<u>The Procedural Default Rule</u>

The Government contends that Defendant's claims are largely barred since he did not raise them on direct appeal, and since he has not shown that any exception to the procedural default rule applies.   Alternatively, the Government maintains that Defendant's claims lack merit.   The Court declines to conduct a lengthy procedural default analysis since it agrees with the Government, for the reasons explained below, that all of Defendant's claims, including any claims which would be subject to the procedural default rule, are meritless in any event. *See, e.g., Marston v. United States*, No. 17-CR-298 (JGK), 2020 WL 6701014, at *6 (S.D.N.Y. Nov. 13, 2020) ("The government argues in its brief that, because the petitioner never challenged the voluntariness of his plea on direct appeal and has not articulated a cause for failing to do so, he is procedurally barred from now raising such a claim in a petition pursuant to 28 U.S.C. § 2255.   However, because the petitioner's claim fails on the merits, the Court need not reach the issue of whether the claim is procedurally barred.") (citations omitted).

<u>The Shotgun Defendant Admittedly Possessed Was a Firearm</u>

Defendant's Section 2255 Motion is primarily based on his assertion that the shotgun he possessed is not a "firearm" as defined by 18 U.S.C. § 921(a)(3), purportedly

8

since it did not have to be "registered," "was not altered, or readily converted," "did not fire any armor piercing ammunition," and/or was possessed "for hunting purposes only". More specifically, on the basis of his belief that his shotgun is not a firearm, Defendant insists that he is actually innocent of violating § 922(g)(1); that Wolford provided ineffective assistance of counsel by failing to move to dismiss the § 922(g)(1) charge and counseling Defendant to plead guilty; that the Government violated his Due Process rights by failing to adduce evidence that his shotgun was a firearm; that the Court violated his Due Process rights and Fed. R. Crim. P. 11 by failing to inform him that his shotgun was not a firearm; and that the Court lacked jurisdiction insofar as it accepted his plea of guilty to a charge which he did not understand, insofar as he mistakenly though his shotgun was a firearm.

These claims all lack merit, and are denied, since Defendant's shotgun was indisputably a firearm within the meaning of 18 U.S.C. § § 921(a)(3) & 922(g)(1). In this regard, § 921(a)(3) defines a "firearm" as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive," which includes a shotgun. *See, e.g., United States v. Benamor*, 937 F.3d 1182, 1188 (9th Cir. 2019) ("Indisputably, Defendant's shotgun was a "firearm" under § 921(a)(3). And Defendant cannot reasonably dispute that he knew the shotgun to be a firearm[, since] he knew that the gun was a weapon "which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." § 921(a)(3).") (citation and internal quotation marks omitted); *see also, United States v. Hayes*, No. CR14-4082-MWB, 2015 WL 8482749, at *1-2 (N.D. Iowa Dec. 9, 2015) ("Hayes argues

that it is impossible for him to have possessed a firearm, as charged in the indictment, because "shotguns are not considered firearms under Chapter 921." . . . [However,] because the Mossberg shotgun here clearly qualifies as a firearm under § 921(a)(3), Hayes's Motion to Dismiss is denied."); *United States v. Hale*, No. 03-CR-6162, 2006 WL 1144420, at *4 (W.D.N.Y. Apr. 25, 2006) ("Petitioner also argues that the shotgun shells are not "ammunition" as defined in the statute. In fact, shotgun shells are ammunition designed to be fired in a shotgun, which constitutes a firearm. 18 U.S.C. § 921(a)(3), (5) and (17)(a).").

Defendant's various arguments to the contrary, such as his assertion that a shotgun possessed for hunting purposes is not a firearm, or that only shotguns that must be registered are firearms, are incorrect. *See, e.g., Utley v. United States*, No. CR 12-20160, 2016 WL 337750, at *5 (E.D. Mich. Jan. 28, 2016) ("The petitioner contends that shotguns, or certain types of shotguns intended primarily for "sporting use," are exempted from the definition of "firearm" under section 921(a)(3). But the language he relies upon is quoted from section 921(a)(4), which defines the term "destructive device," not the term "firearm." And the petitioner has not offered any facts to show, or even to suggest, that the shotgun in question falls under the only explicit exception to section 921(a)(3), which excludes "antique firearms," meaning those made before 1898 and "replica" weapons not designed to use any form of modern ammunition. *See* 18 U.S.C. § 921(a)(16)."); *see also, United States v. Hayes*, 2015 WL 8482749, at *1-2 ("Although the definition of "destructive device" which follows at § 921(a)(4)(B) may exclude certain shotguns, there is no parallel exclusion for such shotguns in the definition of "firearm" in § 921(a)(3). Indeed, "shotguns"

10

have been held to meet the statutory definition of "firearm," whether operable or not. [(collecting cases)] . . . Hayes also relies on 26 U.S.C. § 5845 of the National Firearms Act. That reliance is entirely misplaced. The National Firearms Act, 26 U.S.C. § 5801, et seq., requires the registration of "firearms" by manufacturers, importers, and makers thereof. 26 U.S.C. § 5841. Under 26 U.S.C. § 5861(d), it is unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." . . . The Mossberg shotgun at issue here is not alleged to be one that requires such registration and Hayes has not been charged with violating § 5861(d).").

<u>Defendant's Second Amendment Argument Lacks Merit</u>

Defendant alternatively contends that his conviction must be overturned since § 922(g)(1) is unconstitutional as applied to him, pursuant to *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022) ("*Bruen*"), since he has a Second Amendment right to possess a firearm despite his felony convictions. *See*, ECF No. 53 at 12 ("The fact is here, although Mr. Lee was convicted priorly of a felony, the Constitution does not exclude him from owning or possessing a firearm."). However, this argument has been squarely rejected by the Second Circuit. *See, United States v. Mingo*, No. 23-6818-CR, 2025 WL 3467674, at *1 (2d Cir. Dec. 3, 2025) ("[I]n *Zherka v. Bondi*, 140 F.4th 68 (2d Cir. 2025), we affirmed that our holding in *United States v. Bogle*, 717 F.3d 281, 281–82 (2d Cir. 2013)—that "Section 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons"—survives *Bruen* because our Nation's historical tradition of firearms regulation demonstrates that

11

Congress has the "legislative power, consistent with the Second Amendment, to disarm categories of persons presumed to be dangerous." *Zherka*, 140 F.4th at 75, 90. We also concluded in *Zherka* that this legislative power includes the ability to disarm "all felons[,]" as a felony conviction "is reasonably regarded as an indication that such a person lacks the character of temperament necessary to be entrusted with a weapon." *Id*. at 74 n.8, 94 (internal quotation marks and citation omitted).")."); *see also*, *United States v. Thompson*, 143 F.4th 169, 183 (2d Cir. 2025) ("Thompson argued before the district court that § 922(g)(1) was unconstitutional pursuant to *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022). . . . [But this] argument would be foreclosed by our Court's recent decision in *Zherka v. Bondi*, 140 F.4th 68 (2d Cir. 2025), which rejected an identical argument and upheld the constitutionality of § 922(g)(1)."). Consequently, this claim is also denied.

<u>Defendant's "No Knowledge" Defense Claim Lacks Merit</u>

Defendant further contends that § 922(g)(1) is unconstitutional as applied to him, and/or that the Court lacked jurisdiction over the charge, since he did not have notice of the statute. *See, e.g.*, ECF No. 53 at 7 ("Mr. Lee applies the "NO KNOWLEDGE DEFENSE," whereas he had at no point in time been given any notice prior to allegedly committing an offense against the laws of the United States."). More specifically, Defendant asserts that § 922(g)(1) "has no force of law" since it was not published in the Code of Federal Regulations. *Id*. ("Therefore, contrary to law, Mr. Lee's, [sic] statute, pursuant to Title 18 U.S.C. § 922 had not been published and therefore, if it had not be published, it has no force of law[.]").

However, this argument is also meritless. *See, e.g., United States v. Aldrich*, No. 20-CR-6169CJS, 2021 WL 3863401, at *6 (W.D.N.Y. June 3, 2021) ("Aldrich also maintains that dismissal of the indictment is warranted because implementing regulations of the criminal statutes charged in the indictment were not published in the Federal Register or the Code of Federal Regulations. This argument is meritless because "the Federal Register Act, 44 U.S.C. § 1505, ... by its terms, does not require federal criminal statutes to be published in the Federal Register." *United States v. Casey*, 2005 WL 2114059, *3 (W.D. Tenn. 2005) (collecting cases[; internal citation omitted])."), report and recommendation adopted, No. 20-CR-6169 CJS/MWP, 2021 WL 3861426 (W.D.N.Y. Aug. 30, 2021); *see also, Phillips v. United States*, No. 17-CV-1338-MJR, 2017 WL 3531677, at *7 (N.D. Ill. Aug. 17, 2017) ("Petitioner's eighth contention is easily disposed of because Congress is not required to publish criminal statutes in the federal register. In fact, the federal register is a repository for documents from the executive branch, and it explicitly denounces the notion that Congress must publish statutes in the medium. 44 U.S.C. § 1501; 1505."); *United States v. Walls*, 546 F.3d 728, 740 (6th Cir. 2008) ("[A] basic criminal statute passed by Congress, such as Title 21, is not covered by 44 U.S.C. § 1505(a). *See United States v. Schiefen*, 139 F.3d 638, 639 (8th Cir.1998) (holding that "the Federal Register notice requirements do not apply to federal criminal statutes") (citing 44 U.S.C. § 1505(a) and 5 U.S.C. §§ 551(1)(A) (excluding Congress from the definition of agency) and 552 (stating what materials agencies must publish)). Therefore, we hold that 44 U.S.C. § 1505(a) does not apply to criminal statutes passed by Congress. Walls's convictions are not void on this ground.").

13

Defendant's Jurisdictional Arguments Lack Merit

Defendant next argues that his conviction must be overturned since this Court lacked subject matter jurisdiction over the charge, inasmuch as Congress lacked authority under 18 U.S.C. § 3231 to enact § 922(g)(1).   According to Defendant, the United States' enactment of § 922(g)(1) was an "invasion of the States' sovereignty, and a clear usurpation of law." ECF No. 53 at 9; *see also id*. at 10 ("The petitioner, Mr. Lee, states that the law in question "was plainly a regulation of policing powers of the states," which could have a Constitutional application only where Congress had exclusive authority, such as territories.").

However, this claim is also meritless. See, e.g., *United States v. Thompson*, 143 F.4th 169, 183 (2d Cir. 2025) ("Thompson has been charged with a crime under federal law, 18 U.S.C. § 922(g)(1), and federal district courts "have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States," 18 U.S.C. § 3231."); *see also, United States v. Bogle*, 522 F. App'x 15, 18 (2d Cir. 2013) (Rejecting argument that "the district court lacked subject matter jurisdiction because the relevant jurisdictional statute, 18 U.S.C. § 3231, was not properly enacted by Congress."); *Soler v. United States*, No. 05 CR. 165 LAP, 2015 WL 4879170, at *12 (S.D.N.Y. Aug. 14, 2015) (Rejecting as "plainly meritless" the argument "that Congress lacks the authority to enact criminal laws that apply to crimes committed within the territorial jurisdiction of the states, as opposed to territories owned or controlled by the federal government," observing that, "Soler's argument to the contrary would eviscerate virtually the entirety of the federal criminal justice system, and not surprisingly has been uniformly and regularly rejected by

14

the courts as frivolous.") (collecting cases).

<u>Defendant's Ineffective Assistance Claim Lacks Merit</u>

Lastly, Defendant asserts that Wolford provided ineffective assistance of counsel by failing to file a motion to dismiss the charge and/or to suppress the shotgun and ammunition, which were seized during a warrantless search of his home; by failing to raise jurisdictional offenses; by "lying" and "using intimidation and force" to get Defendant to plead guilty to a charge of which he was innocent; by failing to properly review the PSR with Defendant; and by failing to object to an incorrect calculation of his offense level under the Sentencing Guidelines.

However, these arguments are also plainly meritless. As already discussed, Defendant's contention that his shotgun is not a firearm is incorrect, and hence any alleged claim of ineffectiveness involving Wolford's failure to advance that meritless argument fails. *See, United States v. Davis*, 122 F.4th 71, 76 (2d Cir. 2024) ("[I]t is well settled that failure to make a meritless argument does not amount to ineffective assistance.") (citation and internal quotation marks omitted). Similarly, Wolford's failure to advance the meritless jurisdictional arguments discussed above is not evidence of deficient performance. The same is true of Defendant's contention that Wolford should have moved to suppress the warrantless seizure of the shotgun and ammunition, since the record is clear that Defendant's wife consented to the search, and he has not offered any argument challenging such consent.[4] And finally, as also discussed earlier,

---

[4] *See, e.g., Paul v. City of New York*, No. 16-CV-1952 (VSB), 2023 WL 3724152, at *9 (S.D.N.Y. May 30, 2023) ("[A] warrantless entry and search by law enforcement officers does not violate the Fourth Amendment's proscription of 'unreasonable searches and seizures' if the officers have obtained the consent of a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497

Defendant's belated, bald assertions that Wolford forced him to plead guilty, failed to review the PSR with him, and failed to object to an incorrect calculation of his Guideline offense level, are not credible, since they are disproven by the record, including his prior sworn statements, and therefore do not establish deficient performance. Nor, in any event, has Defendant shown prejudice related to the alleged deficient performance.

## CONCLUSION

For the foregoing reasons, Defendant's § 2255 motion (ECF No. 52) is denied.[5] Defendant's related motion to hold the § 2255 motion in abeyance (ECF No. 54) is also denied, as moot.[6] Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Defendant has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk is directed to close related civil action 23-CV-6615 CJS.

IT IS SO ORDERED.

DATED:   December 15, 2025
         Rochester, New York

                                         CHARLES J. SIRAGUSA
                                         United States District Judge

---

U.S. 177, 179 (1990) (quoting *United States v. Matlock*, 415 U.S. 164 (1974)); *see also Koch v. Town of Brattleboro, Vermont*, 287 F.3d 162, 167 (2d Cir. 2002).").

[5] The Court has considered and rejected all of Defendant's claims, including any that are not specifically discussed herein.

[6] *See*, ECF No. 63 (Asking Court to rule on the § 2255 motion).